**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **CORDERO CORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-365-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.      Introduction and Administrative Proceedings

Cordero Core ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on December 20, 2018 and an application for Supplemental Security Income under Title XVI of the Social Security Act on January 28, 2019—alleging disability onset as of June 30, 2018 due to severe asthma, severe bronchitis, and weak immune system.  (Tr. 10, 49-50, 64-65).[2]  Plaintiff's claims were denied at the initial level on July 3, 2019 and again after reconsideration on December 3, 2019.  (Tr. 10, 62-63, 77-81, 95, 110, 118).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 10, 125-27).  The ALJ subsequently heard the case on October 19, 2020 (Tr. 10, 30-47), at which time testimony was given by Plaintiff (Tr. 35-43) and by a vocational expert (Tr. 43-47).  The ALJ took the matter under advisement and issued a written decision on December 17, 2020 that found Plaintiff not disabled.  (Tr. 10-19).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.

2.  The claimant has not engaged in substantial gainful activity since June 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: asthma, major depressive disorder, and panic disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can have only occasional exposure to extreme temperatures, wetness, or humidity in the work setting and occasional exposure to pulmonary irritants such as fumes, odors, dust, and gases. The work should require no more than the understanding, remembering, and carrying out of simple instructions with infrequent or less than occasional changes, occasional decision-making, and occasional interaction with others. If afforded mid-morning, lunch, and midafternoon breaks, those activities can be sustained for 2-hour periods and therefore, over an 8-hour day.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on September 26, 1986 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12, 13, 14, 17, 18, 19).  On March 27, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner.  *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.  (Doc. 1 at pp. 1-2; Doc. 16 at p. 17).  The court construes Plaintiff's supporting brief (Doc. 16) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 18) as a competing motion for summary judgment.  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 12, 13), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be granted, that the Commissioner's motion for summary judgment is due to be denied, and that the final decision is due to be reversed and remanded.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158

3

(11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids

---

[4] *McDaniel* is an SSI case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

### III.    Issues on Appeal

Plaintiff raises three issues on appeal: (1) whether the ALJ properly evaluated the opinion evidence in determining Plaintiff's mental RFC; (2) whether the ALJ posed a flawed hypothetical question to the VE; and (3) whether the ALJ properly evaluated Plaintiff's subjective statements. (Doc. 16 at p. 2).

### IV.    Discussion

#### A.    Evaluation of Opinion Evidence in Determining Plaintiff's Mental RFC

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of the examining and non-examining mental health specialists in determining Plaintiff's mental RFC. (Doc. 16 at pp. 2, 5).  Plaintiff also argues that the ALJ's mental RFC finding was erroneous as it failed to incorporate many of the limitations described by the examining and non-examining experts with which the ALJ purportedly agreed.  (*Id*. at p. 6).

Because Plaintiff's claims were filed on December 20, 2018 and January 28, 2019 (Tr. 10), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)."  *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).   "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).   "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022); *Nix*, 2021 WL 3089309 at *6 ("The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.") (citing 20 C.F.R. § 404.1520c(a)-(c)); 20 C.F.R. §§ 404.1520c(b), 416.920c(b)

("[The agency] will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record.").  "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ...  Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations.").  "[T]he  task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on

the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.  The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).  "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's

RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

On June 10, 2019, Glen Paul Vollenweider, Ph.D., conducted a consultative psychological examination of Plaintiff at the request of the Social Security Administration.  (Tr. 16, 364).  The ALJ noted that Plaintiff reported that he became agitated easily, was not a people person, and had difficulty with memory and concentration.  (Tr. 16, 365-66).  The ALJ noted that Dr. Vollenweider observed that a rapport was easy to establish with Plaintiff, that he was cooperative but depressed and irritable, that he was overtalkative, that his recent memory was impaired but his overall memory was intact, that his judgment, insight, and decision-making were fair, and that he was unable to perform serial 7s but could perform some of the math problems.  (Tr. 16, 365-66).  The ALJ observed that Plaintiff was ultimately diagnosed with panic disorder and depression.  (Tr. 16, 364, 366).

The ALJ further noted that Dr. Vollenweider opined that Plaintiff's ability to manage basic self-care was unimpaired.  (Tr. 16, 366).  And Dr. Vollenweider also opined that Plaintiff's ability to understand, carry out, and remember short, simple 1-2 step instructions, to maintain attention, concentration, and pace for periods of at least two hours, to maintain a regular schedule with appropriate punctuality, and to sustain ordinary work routine without the need for special supervision were mildly impaired.  (Tr. 16, 366).  The ALJ opined that Plaintiff's ability to maintain regular work attendance without missing more than one-to-two days per month due to psychological signs or symptoms, to seek and accept appropriate instructions and criticism from supervisors, to maintain socially appropriate appearance, behavior, and other aspects of social interaction in the workplace, and to manage finances in a reliable and independent manner were

moderately impaired.  (Tr. 16, 366).  The ALJ agreed with Dr. Vollenweider's opinion that Plaintiff could maintain attention and concentration for at least two-hour periods.  (Tr. 17).  Overall, the ALJ found that Dr. Vollenweider's opinions were "somewhat persuasive" but stated that "as noted earlier, nothing in the medical records support] potential absences secondary to [Plaintiff's] well-controlled mental impairments."  (Tr. 17).

According to the ALJ, the prior administrative medical findings of the non-examining state agency medical experts were also considered.  (Tr. 17).  The ALJ, however, did not discuss in detail the findings of either Robert Estock, M.D. or Allen Carter, Ph.D. as to Plaintiff's mental limitations.   On July 3, 2019, Dr. Estock reviewed Plaintiff's medical records and, pursuant to the psychiatric review technique ("PRT") used in assessing mental impairments, found that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself.  (Tr. 55, 70).  On reconsideration, Dr. Carter made the same findings.  (Tr. 88, 103).

In assessing Plaintiff's mental RFC, Dr. Estock opined that Plaintiff was "capable of understanding and remembering simple instructions but not detailed ones."  (Tr. 59, 74).  As to "sustained concentration and persistence capacities and/or limitations," Dr. Estock opined:

> Claimant could carry out simple instructions and sustain attention to simple, routine, and familiar tasks for periods of at least 2 hours, but could not carry out detailed instructions.  Can complete an 8 hour workday and 40 hour workweek without significant psychiatric related interruptions.  Claimant would benefit from a familiar repetitive work routine but should avoid: quick decision making, rapid changes, and multiple demands.  Claimant would benefit from regular rest breaks and a slowed pace but would still be able to maintain an acceptably consistent work pace.

(Tr. 60, 75).  Dr. Estock further opined that Plaintiff could "relate appropriately to the public, peers, and supervisors but criticism should be supportive and non-confrontational."  (Tr. 60, 75).  Dr. Estock additionally opined that Plaintiff could adapt to infrequent, well-explained changes,

that he could avoid hazards, and that he could travel, make plans, and set goals independently. (Tr. 61, 76).  Dr. Carter gave the exact same opinions.  (Tr. 92-93, 107-08).

The ALJ found that the mental opinions offered at both the initial and the reconsideration levels were somewhat persuasive.  (Tr. 17).  Although the ALJ cited to the records of the non-examining doctors, the ALJ did not describe the actual findings in those records:

> The undersigned notes that mental opinions were offered at both the initial and the reconsideration levels, and these opinions are somewhat persuasive. While the undersigned agreed that the records supports moderate limitations, additional limitations in interaction were appropriate after hearing the claimant's testimony. Therefore, these opinions are only somewhat persuasive (Exhibits 1A, 2A, 5A, and 6A).

(Tr. 17).

Plaintiff argues that the ALJ failed to sufficiently articulate the reasons for rejecting the opinions of Dr. Vollenweider and the State agency consultants pursuant to 20 C.F.R. §§ 404.1520c(a), (c), § 416.920c(a), (c) and that the ALJ also failed to incorporate into Plaintiff's RFC many of the limitations described by the examining and non-examining experts with which the ALJ purportedly agreed.  (Doc. 16 at pp. 6-9).  As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC.  *Moore*, 649 F. App'x at 945.  Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion."  *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).  While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative

findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."   20 C.F.R. § 404.1513a(b)(1); 20 C.F.R. 416.913a(b)(1).   The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(a).   "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084 at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."). *See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).   Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'"   *Szoke*, No. 8:21-CV-502, 2022 WL 17249443 at *9 (citation omitted).

Although the ALJ found the various opinions to be somewhat persuasive, the ALJ was under no obligation to adopt every part of the opinions of the examining and non-examining doctors.   "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive."   *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). *See also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800 at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the

RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719 at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

However, the ALJ here failed to sufficiently discuss the supportability and consistency factors of the opinions of the examining and non-examining doctors and as a result failed to provide for meaningful judicial review.  While not required to provide a detailed description of the supportability and consistency (or lack thereof) of each finding, *Dease v. Kijakazi*, No. 2:20-CV-394, 2022 WL 428173 at *5 (M.D. Ala. Feb. 11, 2022), the ALJ failed to adequately explain the connection between the RFC finding and the opinions of the examining and non-examining doctors as to certain limitations and failed to provide a meaningful evaluation of the persuasiveness of their opinions.

Plaintiff asserts that Dr. Vollenweider opined that he was "moderately impaired" in his ability to seek and accept appropriate instructions and criticism from supervisors and to maintain socially appropriate appearance, behavior, and other aspects of social interactions in the workplace, and that he had "mild" limitations in his ability to (1) understand, carry out, and remember short, simple 1 to 2 step instructions, (2) maintain attention and concentration and pace for 2-hour periods, (3) maintain a regular schedule, and (4) sustain ordinary work routine without the need for special supervision.  (Doc. 16 at p. 6, citing Tr. 366).  Plaintiff also asserts that Dr. Estock and Dr. Carter opined that he was not capable of understanding, remembering, or

carrying out detailed instructions, that he would benefit from a familiar, repetitive work routine and avoiding quick decision-making, rapid changes, and multiple demands, and that any criticism would need to be "supportive and non-confrontational." (*Id*. at p. 7, citing Tr. 59-60, 74-75, 92-93 and 107-108). Plaintiff contends that the ALJ failed to incorporate those opinions into his RFC despite finding the opinions somewhat persuasive. (*Id*. at pp. 6-8). Specifically, Plaintiff contends that the ALJ failed to include into the RFC any limitations as to ability to accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior in the workplace, ability to understand, remember, and carry out simple, 1 to 2 step instructions, maintain attention and concentration during a 2-hour period, maintain a regular work schedule, or sustain ordinary routine without special supervision. (*Id*. at p. 6). Similarly, Plaintiff contends that the ALJ failed to include limitations as to maintaining attention and concentration for extended periods, completing a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, or accepting instructions and responding appropriately to criticism from supervisors. (*Id*. at pp. 7-8).

In fashioning the RFC, the ALJ found that Plaintiff's "work should require no more than the understanding, remembering, and carrying out of simple instructions with infrequent or less than occasional changes, occasional decision-making, and occasional interaction with others," and that "[i]f afforded mid-morning, lunch, and midafternoon breaks, those activities can be sustained for 2-hour periods and therefore, over an 8-hour day." (Tr. 14). Limiting to the "carrying out of simple instructions" addressed the opinions that Plaintiff was limited in the ability to understand, remember, and carry out simple 1 to 2 step instructions and was unable to carry out detailed instructions. (Tr. 46). Plaintiff maintains that although the ALJ found he could perform the jobs

of routing clerk (DICOT 222.687-022, 1991 WL 672133), labeler (DICOT 209.587-034, 1991 WL 671802), and document specialist/photocopy operator (DICOT 207.685-014, 1991 WL 671745), which all require reasoning level two, he was limited to jobs at reasoning level one based upon his limitation that he could carry out no more than short, one-to-two step instructions.  (Doc. 16 at p. 8).  Plaintiff further argues that "[i]t would be speculation to conclude that such jobs can be performed if [he] cannot perform detailed work but instead is limited to jobs involving simple, one-to-two step or short tasks since the VE was never asked to consider such limitations nor is there an explanation if those jobs exist with this apparent conflict between possible testimony from the VE and the DOT."   (Doc. 16 at p. 9).

"Job descriptions in the [Dictionary of Occupational Titles] ["DOT"] include specific vocational preparation time ("SVP") numbers and reasoning levels, which supply supplemental information about the listed jobs." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016).  The DOT describes the reasoning levels of one and two, as follows:

> 02 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 01 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See* DOT Appendix C – Components of the Definition Trailer, 1991 WL 688702 (4th ed. rev'd Jan. 1, 2016).  However, the Eleventh Circuit has held that there is no apparent conflict between one's limitation to following simple instructions and positions that require the ability to follow "detailed but uninvolved" instructions at a reasoning level two. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021); *Williamson*, 2022 WL 2257050 at *4 ("The

Eleventh Circuit and courts within it have found that a limitation to simple, routine, and repetitive tasks/work is not inconsistent with a reasoning level two job.") (citing *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020)); *Pennington v. Kijakazi*, No. 3:20-cv-434, 2022 WL 816076 at *9 (M.D. Ala. Mar. 17, 2022) (finding that plaintiff's RFC, which included a limitation to "simple routine tasks involving no more than simple, short instructions and simple work-related decisions" was not inconsistent with level two reasoning jobs); *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) ("Recently, ... we held that there is no apparent conflict between a claimant's RFC to understand, carry out, and remember simple instructions and level 2 reasoning."); *Alicea v. Kijakazi*, No. 8:22-CV-567, 2023 WL 1110374 at *10 (M.D. Fla. Jan. 9, 2023), *report and recommendation adopted sub nom. Camacho Alicea v. Kijakazi*, No. 8:22-CV-567, 2023 WL 1102648 (M.D. Fla. Jan. 30, 2023); *Tolbert*, 2022 WL 4591646 at *8. The RFC was also consistent with the non-examining doctors who opined that Plaintiff could carry out simple instructions.  (Tr. 60, 75, 92, 107).  Thus, this argument fails.

Further, Plaintiff's RFC sufficiently addressed the opinion of Dr. Vollenweider that Plaintiff was mildly limited in maintaining attention and concentration and pace for 2-hour periods, maintaining a regular schedule, and sustaining ordinary work routine without the need for special supervision.  The Social Security Administration's Programs Operations Manual System ("POMS") provides that "mental abilities needed for any job" include the ability to understand, carry out, and remember simple instructions, which include, among other things, "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)."  SSA POMS DI § 25020.010(B)(2)(a) (last updated Aug. 23, 2018); *see also* SSA POMS DI § 24510.005(C)(2)(b), General Guidelines for RFC Assessment, (last updated Aug. 23, 2018) ("Consider an 8-hour

workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions.").  Here, the ALJ found that Plaintiff had moderate limitation in the ability to concentrate, persist, or maintain pace and limited him to simple unskilled work that could be sustained for two-hour periods, with normal breaks, over a normal eight-hour day.  (Tr. 14, 44-46).  "[T]he Eleventh Circuit has held that a limitation to 'simple work' or something similar sufficiently accounts for moderate difficulties in concentration, persistence, and pace if the medical evidence shows the claimant can perform simple, routine work."  *Jackson v. Kijakazi*, No. 1:20-CV-00039, 2021 WL 4472597 at *3 (M.D. Ala. Sept. 29, 2021) (citing *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (holding that because the objective evidence showed that plaintiff could perform simple, routine tasks, the ALJ's limitation of unskilled work in the RFC sufficiently accounted for her moderate difficulties in concentration, persistence, and pace) and *Smith v. Comm'r of Soc. Sec.*, 486 F. Appx. 874, 875 (11th Cir. 2012) (approving RFC that limited claimant to simple, routine, repetitive tasks as adequately accounting for moderate limitations in concentration, persistence, and pace when medical evidence supported that claimant could perform simple, routine, repetitive work)); *James C. v. Comm'r, Soc. Sec. Admin.*, No. 1:17-CV-00884, 2018 WL 6137611 at *5 (N.D. Ga. Sept. 29, 2018) (noting the "well-established [Eleventh Circuit] precedent that claimants with moderate limitations in concentration, persistence, and pace can do unskilled work and handle simple instructions when medical evidence supports those limitations") (collecting cases).  The ALJ's limitations were consistent with the opinion evidence that Plaintiff was mildly limited in maintaining attention and concentration for periods of at least two hours.  *See Jackson*, 2021 WL 4472597 at *5 ("Dr. Veits opined that Plaintiff is 'moderately limited' in attention and concentration for 'extended periods' but can 'attend and concentrate for two-hour periods.'

'Simple work' would not require more than that.") (citing SSA POMS DI § 24510.005).

Moreover, as the RFC included mid-morning, lunch, and midafternoon breaks over an 8-hour day,

the RFC accounted for Dr. Vollenweider's opinion that Plaintiff was mildly impaired maintaining

a regular work schedule.   Additionally, the RFC was consistent with the opinions of the non-

examining doctors who opined that Plaintiff could carry out simple instructions and sustain

attention to simple, routine, and familiar tasks for periods of at least 2 hours and complete an

8-hour workday and 40-hour workweek without significant psychiatric related interruptions.

(Tr. 60, 75, 92, 107).

As to Dr. Vollenweider's opinion that Plaintiff was mildly limited in sustaining ordinary

routine without special supervision, the non-examining doctors did not find such a limitation.

(Tr. 60, 75, 92-93, 107-08).  As stated previously, an ALJ is not required to adopt every part of an

opinion that is found persuasive.  *Guth*, 2022 WL 8211404 at *9; *Tolbert*, 2022 WL 4591646 at

*2; *Williamson*, 2022 WL 2257050 at *3.   The non-examining doctors opined that Plaintiff would

benefit from a familiar, repetitive work routine and avoiding quick decision-making, rapid

changes, and multiple demands, and that he would benefit from regular rest breaks and a slowed

pace but would still be able to maintain an acceptably consistent work pace.  (Tr. 60, 75, 92-93,

107-08).  Plaintiff's RFC is consistent with the opinions of the non-examining doctors by limiting

Plaintiff to infrequent or less than occasional changes, occasional decision-making, and occasional

interaction with others.  (Tr. 14).[5]   The problem, however, is that the ALJ did not provide any

---

[5] Citing to the ratings in the MRFC assessment, Plaintiff argues that the ALJ also failed to properly address all the findings from non-examining doctors who opined that he was "moderately limited" in his ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) work in coordination with or in proximity to others without being distracted by them, (5) complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (6) interact

analysis of the non-examining doctors' opinions.  Likewise, although Dr. Vollenweider opined that Plaintiff was moderately impaired in maintaining socially appropriate appearance, behavior, and other aspects of social interactions in the workplace (Tr. 366), the non-examining doctors found that Plaintiff was not significantly limited in this area and found that Plaintiff could relate appropriately to the public, peers, and supervisors.  (Tr. 60, 75, 93, 108).  However, the ALJ did not provide any analysis of the non-examining doctors' opinions on this point.

As to Dr. Vollenweider's opinion that Plaintiff was "moderately impaired" in his ability to seek and accept appropriate instructions and criticism from supervisors (Tr. 366), the non-examining doctors also opined that criticism should be supportive and non-confrontational (Tr. 60, 75, 93, 108).  The ALJ made no mention or assessment of this limitation in the decision.  Further, Dr. Vollenweider found that Plaintiff was moderately impaired in his ability to maintain regular work attendance without missing more than 1-2 days per month.  (Tr. 366).  The ALJ stated that

---

appropriately with the general public, (7) accept instructions and respond appropriately to criticism from supervisors, (8) get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and (9) respond appropriately to changes in the work setting.  (Doc. 16 at p. 7; Tr. 59-61, 74-76, 92-93, 107-08).  However, the Social Security Administration's Programs Operations Manual System ("POMS") clarifies that these ratings in the MRFC assessment, which asks the provider to rate the presence and degree of a claimant's limitations in four functional areas, are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  SSA POMS DI § 24510.060(B)(2)(a), (4), 2001 WL 1933367 (last updated Apr. 4, 2021) (emphasis omitted).  "'In this Circuit, the ALJ is not required to include the moderately limited notations from the summary conclusions section in a claimant's RFC.'"  *DeJesus v. Comm'r of Soc. Sec.*, No. 6:20-CV-1685, 2022 WL 833677 at *6 (M.D. Fla. Mar. 21, 2022) (citation and internal quotation marks omitted); *Crumley v. Comm'r of Soc. Sec.*, No. 3:17-cv-973, 2019 WL 1417320 at *1 (M.D. Fla. Mar. 29, 2019) (noting that the POMS directs agency medical consultants to describe "the degree and extent" of a claimant's "capacity or limitation" in narrative format, and "it therefore is the narrative written by the medical consultant, rather than the summary conclusions, that the ALJ must use as the assessment of a claimant's RFC"); *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (explaining that checking boxes as "moderately limited" are only part of a worksheet that does not constitute the doctor's actual RFC assessment and only means that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation, and after checking the boxes as an aid, the doctor is then required to detail the actual RFC assessment).

"as noted earlier, nothing in the medical records support[ed] potential absences secondary to [Plaintiff's] well-controlled mental impairments." (Tr. 17). The court is unclear as to what "as noted earlier" references, as there is not a specific discussion in the ALJ's decision concerning Plaintiff's potential absences. To be sure, the non-examining doctors found that Plaintiff could complete an 8-hour workday and 40-hour workweek without significant psychiatric related interruptions (Tr. 60, 75, 92, 107); however, the ALJ did not provide any detailed discussion of the non-examining doctors' opinions.

On the whole, the ALJ's opinion is bereft of detail in discussing the supportability and consistency of the opinions of the examining and non-examining doctors and fails to provide a meaningful evaluation of the persuasiveness of the opinions. *See e.g., Dease*, 2022 WL 428173 at *5 ("A detailed description of every part of a medical source opinion's supportability and consistency (or lack thereof) is not required, but the ALJ's decision must have some indication or explanation to connect the RFC—no regular absences expected—and the ALJ's broad disregard of the medical opinion—one to two absences expected every month—he has otherwise deemed persuasive."); *Torres v. Kijakazi*, No. 1:21-CV-20037, 2022 WL 4000797 at *12 (S.D. Fla. Aug. 15, 2022), *report and recommendation adopted*, No. 1:21-CV-20037, 2022 WL 3975121 (S.D. Fla. Sept. 1, 2022) ("Given the requirement that an RFC analysis contemplate mental limitations, the ALJ's finding is not supported by substantial evidence, since he fails to explain whether or how the limitation of potential absences was considered in Plaintiff's RFC."); *Devron M. v. Comm'r, Soc. Sec. Admin.*, No. 2:20-CV-291, 2022 WL 16752083 at *4 (N.D. Ga. Aug. 22, 2022). Tellingly, the Commissioner's response to the merits of Plaintiff's arguments consisted only of the following:

Substantial evidence supports the ALJ's evaluation of the opinions of Drs. Vollenweider, Estock, and Carter. *See* 20 C.F.R. §§ 404.1520c(c)(1), (2). The ALJ found Dr. Vollenweider's opinion somewhat persuasive because his opinion regarding potential absences was not supported or consistent with the other evidence such as his well-controlled mental impairments (Tr. 17).

The ALJ found the opinions of Dr. Estock and Dr. Carter were somewhat persuasive because their opinion did not account for all the limitations resulting from Plaintiff's impairments (Tr. 17). The ALJ specifically stated, "While the undersigned agreed that the records supports moderate limitations, additional limitations in interaction were appropriate after hearing the claimant's testimony." (Tr. 17).

Thus, the ALJ properly addressed the factors of supportability and consistency regarding the opinions of Drs. Vollenweider, Estock, and Carter.

(Doc. 18 at p. 12).

Based upon the foregoing, the court concludes that the ALJ did not properly evaluate the opinion evidence, and the court therefore cannot meaningfully confirm that the ALJ's determination is supported by substantial evidence.  This case therefore is due to be remanded to the Commissioner for further consideration of all evidence concerning Plaintiff's mental limitations and resulting functional limitations, including (but not limited to) the proper evaluation of Dr. Vollenweider's, Dr. Estock's, and Dr. Carter's opinions.

## B.    Remaining Issues

Plaintiff raises two other claims that are interrelated to the evaluation of Plaintiff's mental RFC.  Plaintiff contends that the ALJ relied on a flawed hypothetical question to the VE. (Doc. 16 at p. 11).  Specifically, Plaintiff contends that the hypothetical to the VE only limited him mentally to understanding, remembering, and carrying out simple instructions with infrequent or less than occasional changes, occasional decision-making, and occasional interactions with co-workers, supervisors, and the public, sustained for two-hour periods with no more than normal breaks but that the hypothetical question failed to address limitations in his ability to concentrate

over a period of time, to maintain a particular work pace over the course of a workday or workweek, or to persist at tasks.  (*Id*. at p. 12, citing Tr. 44).  Plaintiff further contends that the ALJ failed to properly evaluate his subjective statements as they related to his mental impairments. (*Id*. at pp. 13-17).

Because this case is being remanded for other reasons, the court need not decide Plaintiff's other arguments.  *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1323 n.10 (11th Cir. 2015) (explaining that "[b]ecause this case must be remanded for consideration of the new evidence, [the court] need not address" the plaintiff's additional arguments in support of his appeal); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that, where remand was required, it was unnecessary to review other issues raised) (citations omitted); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issue when the case was reversed due to other dispositive errors); *Pelham v. Astrue*, No. 5:11-CV-01354, 2012 WL 4479287 at *9 (N.D. Ala. Sept. 21, 2012) ("Because the first issue on appeal is meritorious, the court does not need to address any further issues."); *Devron M.*, 2022 WL 16752083 at *4; *Dease*, 2022 WL 428173 at *7 n.5 ("Because remand is required, the Court pretermits review of the other issues Plaintiff raised.").  On remand, the Commissioner should reassess the entire record, providing sufficient reasons and readily identifiable evidentiary support for the decision.  *Nichols v. Kijakazi*, No. 2:20-CV-1053, 2023 WL 3138938 at *18 (M.D. Ala. Apr. 7, 2023), *report and recommendation adopted*, No. 2:20-CV-1053, 2023 WL 3137973 (M.D. Ala. Apr. 27, 2023) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (holding that, on remand, the ALJ must reassess the entire record)); *Amerson v. Saul*, No. 8:19-CV-682, 2020 WL 13594933 at *5 (M.D. Fla. Sept. 23, 2020).

**V.      Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 16) is due to be **GRANTED**;

- that the Commissioner's motion for summary judgment (Doc. 18) is due to be **DENIED**; and

- that the Commissioner's decision is due to be **REVERSED and REMANDED** with instructions for additional proceedings consistent with this opinion.

A separate judgment will issue.

**DONE** this the 5th day of September 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**